KSC/02.12.25
AS\MKH: USAO#2025R00066

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC- GREENBELT
'25 FEB 13 PM 4:24

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | **UNDER SEAL** |
| v. | * | |
| | * | |
| **MANUEL ERAZO ALVARADO,** | * | CRIMINAL NO. 25CR28 SAG |
| a/k/a Castigo, | * | |
| | * | |
| **LUIS ALBERTO GOMEZ,** | * | (Murder in Aid of Racketeering, |
| a/k/a Sarko, | * | 18 U.S.C. § 1959(a)(1) and § 2) |
| | * | |
| **ERICK GUILLEN PLEITEZ,** | * | |
| a/k/a Kilo, | * | |
| | * | |
| [REDACTED] | * | |
| | * | |
| and | * | |
| | * | |
| **HERMAN ALBERTO HILDALGO** | * | |
| **CRUZ,** | * | |
| a/k/a Pisces, | * | |
| | * | |
| Defendants. | * | |

## INDICTMENT

### COUNT ONE

(Murder in Aid of Racketeering – Victim 1)

The Grand Jury for the District of Maryland charges that:

#### The MS-13 Enterprise

1.   At all times relevant to this Indictment, in the District of Maryland, and elsewhere, defendants **MANUEL ERAZO ALVARADO**, a/k/a "Castigo"; **LUIS ALBERTO GOMEZ,**

1

a/k/a "Sarko"; ERICK GUILLEN PLEITEZ, a/k/a "Kilo"; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ HERMAN ALBERTO HILDALGO CRUZ, a/k/a "Pisces," were members and associates of the violent international street gang *La Mara Salvatrucha*, also known as "MS-13."

2. MS-13, including its leaders, members, and associates, constituted an enterprise, as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3. MS-13, through its leaders, members, and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, 2-206, 1-201, and 1-202, and the Common Law of Maryland; and offenses involving drug trafficking, in violation of Title 21, United States Code, Sections 841 and 846.

### Background and Structure of the MS-13 Enterprise

4. MS-13 was a gang composed primarily of immigrants or descendants of immigrants from El Salvador, with members operating in the State of Maryland, including in Anne Arundel County, Prince George's County, Baltimore City, Baltimore County, and throughout the United States.

5. The name "Mara Salvatrucha" was a combination of several slang terms. The word "Mara" was the term used in El Salvador for "gang." The word "Salvatrucha" was a combination of the words "Salva," which was an abbreviation for "Salvadoran," and "trucha," which was a slang term for "fear us," "look out," or "heads up."

6. In the United States, MS-13 has been functioning since at least the 1980s. MS-13 originated in Los Angeles, California, where MS-13 members banded together for protection against the larger Mexican groups. MS-13 quickly spread to states across the country, including Maryland.

7. MS-13 was a national and international criminal organization and was one of the largest street gangs in the United States. Gang members actively recruited members, including juveniles, from communities with a large number of Salvadoran immigrants.

8. Members of MS-13 from time to time signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS 13," or similar tattoos, often written in gothic lettering. Members also signified their membership through tattoos of devil horns in various places on their bodies. Members sometimes avoided conspicuous MS-13 tattoos, instead wearing discreet ones such as "503," spider webs, three dots in a triangle formation signifying the phrase "mi vida loca," or clown faces with phrases such as "laugh now, cry later." Some MS-13 members have chosen not to have tattoos at all, or to have them placed on areas such as the hairline where they can be easily covered, in order to conceal their gang affiliation from law enforcement.

9. The gang colors of MS-13 were blue, black, and white, and members often wore clothing, particularly sports jerseys, with the number "13," or with numbers that, when added together, totaled 13, such as "76." MS-13 members also wore blue and white clothing to represent their membership, including blue and white shoes such as the Nike Cortez sneakers. As with tattoos, some MS 13 members selected more discreet ways of dressing to signify their membership and at the same time avoid detection by law enforcement.

10. MS-13 members referred to one another by their gang names, or monikers, and often did not know fellow gang members except by their gang names.

11. Members of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons. MS-13 members required that all individuals show respect and deference to the gang and its membership. To protect the gang and to enhance its reputation, MS-13 members were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence.

12. Members and associates of MS-13 frequently engaged in criminal activity, including, but not limited to, murder, assault, drug trafficking, and extortion, as well as attempts and conspiracies to commit such offenses. MS-13 members and associates were required to commit acts of violence, including against rival gang members to gain entrance to, and maintain membership and discipline within the gang. Participation in criminal activity by a member or associate, particularly in violent acts directed at rival gangs or as directed by gang leadership, increased the respect accorded to that member or associate, resulted in that member or associate maintaining or increasing his position in the gang, and opened the door to a promotion to a leadership position. One of the principal rules of MS-13 was that its members or associates must attack and kill rivals whenever possible. Rivals were often referred to as "chavalas." MS-13, in the area of Anne Arundel County, Maryland maintained rivalries with, among others, the 18th Street Gang.

13. Cooperation with law enforcement is also strictly prohibited under MS-13's rules. It is well understood within the gang that anyone who assists the authorities will be punished with death, and that the gang honors those who have killed police informants.

14. Prospective members who sought to join MS-13 were required to complete an initiation process. Individuals who associated and committed crimes with the gang were called "paisas," "paros," "esquinas," or "observaciones." Individuals who were attempting to join the

4

gang were called "chequeos," or "cheqs." Chequeos underwent a probationary period during which they were required to commit crimes on behalf of MS-13 to achieve trust and prove their loyalty to the gang. To join MS-13 and become full members or "homeboys," prospective members were required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang. During that initiation, other members of MS-13 would beat the new member, usually until a gang member finished counting aloud to the number thirteen, representing the "13" in MS-13.

15. Within MS-13, the primary units of organization were known as "cliques," that is, smaller groups operating in a specific city or region. Cliques operated under the umbrella rules of MS-13. MS-13 cliques often worked together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement. In Maryland and the surrounding area, these cliques included, among others, Hollywood Locos Salvatrucha ("HLS"), Fulton Locos Salvatrucha ("FLS" or "Fulton"), Hempstead Locos Salvatrucha ("Hempstead"), Normandie Locos Salvatrucha ("NLS" or "Normandie"), Sailors Locos Salvatrucha Westside ("SLSW" or "Sailors"), Coronados Locos Salvatrucha ("CLS"), Parkview Locos Salvatrucha ("PVLS"), Guanacos Little Psychos Salvatrucha ("GLS"), and Langley Park Salvatrucha ("LPS").

16. Each clique was presided over by the "First Word," the leader or president of the clique. The leader was also sometimes referred to as "Primera Palabra" or "Corredor." The "Segundo Palabra" or "Second Word" was the second-in-command of the clique. General members and associates were required to take orders from the First Word and Second Word.

17. MS-13 cliques kept in contact and reported to the leaders for their respective cliques, who were oftentimes based in various states or in El Salvador. Cliques contacted their leaders based in other states or El Salvador using cellular telephones during clique meetings to

keep them updated on gang business, for advice, and to resolve disagreements regarding operations among local cliques. Incarcerated clique leaders based in El Salvador regularly communicated and directed orders to Maryland-based cliques through phones smuggled into Salvadoran prisons.

18. MS-13 members met on a regular basis to, among other things, discuss gang affairs and report on acts of violence committed by their members, with the goal of inciting and encouraging further violence. Each clique held clique meetings where business specific to that clique was discussed. Any perceived indiscretions by members or violations of MS-13 rules were talked about at clique meetings and punishments or "violations" were issued. Violations often took the form of beatings by fellow MS-13 members, often referred to as "court" or "calentons." More serious violations resulted in the issuance of a "greenlight," which was an order and/or approval to kill.

19. MS-13 leaders from various cliques also held regional meetings to discuss issues between cliques and discuss criminal ventures among the cliques. Clique leaders from across the United States, from other countries, and within regions of the United States would meet or communicate by telephone conference to discuss gang rules and gang business, to resolve problems or issues among cliques and gang members of different cliques, and to unite gang members from across the country.

20. MS-13 received money and income from sources including member dues and the extortion or "taxing" of illegitimate and legitimate businesses, as well as narcotics trafficking. Such funds were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members who were imprisoned in the United States, both inside and outside of Maryland, and in El Salvador.

21. MS-13 members communicated about gang activities with other MS-13 members in Maryland and elsewhere using mobile telephones, telephone text messages, social media such as Facebook, e-mail accounts, and other modes of communication. Additionally, MS 13 members used international money wire transfers to conduct and promote gang activities.

### Purposes of the MS-13 Enterprise

22. The purposes of MS-13 included the following:

   a. Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, threats of violence, and violence, including assaults and murder;

   b. Promoting and enhancing the enterprise and its leaders', members', and associates' activities, including, but not limited to, murder, kidnapping, extortion, drug trafficking, robbery, and other criminal activities;

   c. Keeping victims, potential victims, and community members in fear of the enterprise through violence and threats of violence;

   d. Providing financial support and information to gang leaders, members, and associates, including individuals incarcerated in the United States and in El Salvador;

   e. Providing assistance to gang leaders, members, and associates who committed crimes on behalf of the enterprise; and

   f. Hindering, obstructing, and preventing law enforcement officers from identifying participants in the enterprise's criminal activity, from apprehending the perpetrators of those crimes, and from successfully prosecuting and punishing the offenders.

### Methods and Means of the MS-13 Enterprise

23. Among the methods and means by which defendants MANUEL ERAZO ALVARADO, LUIS ALBERTO GOMEZ, ERICK GUILLEN PLEITEZ, ███████ ███████, HERMAN ALBERTO HILDALGO CRUZ, and other members and associates of MS-13 conducted and participated in the conduct of the affairs of the enterprise were the following:

    a. MS-13 members and associates used intimidation, threats of violence, and violence, including assaults and murder, to preserve, expand, and protect MS-13's territory and activities, to promote and enhance its prestige, reputation, and position in the community, and to discipline gang members who had been disloyal or had violated gang rules;

    b. MS-13 members and associates attended regular gang meetings and communicated with other MS-13 members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; identifying for the purpose of assaulting or murdering rival gang members and others; efforts to increase gang income, through means such as drug trafficking and extortion; MS-13 members and associates who had been arrested or incarcerated; disciplining MS-13 members and associates who had violated gang rules; police interactions with MS-13 members and associates; the identities of individuals suspected of cooperating with law enforcement, and proposed actions to be taken against them; and plans and agreements regarding the commission of future crimes, as well as ways to conceal these crimes;

    c. MS-13 members and associates also communicated with other MS-13 members in Maryland and elsewhere, and represented their gang allegiance, through social media such as Facebook, including by posting photographs of themselves with other gang members,

8

showing gang hand signs, wearing colors or clothing associated with MS-13, and posing with weapons or gang-related graffiti, and by sending and/or posting messages referencing their affiliation with MS-13;

    d.    MS-13 members and associates financed the enterprise through a variety of activities, including drug trafficking, the extortion of money – sometimes referred to as "rent" – from legitimate and illegitimate businesses operating on the gang's turf, and the collection of dues from gang members;

    e.    MS-13 members and associates distributed and agreed to distribute controlled substances on behalf of the gang;

    f.    The funds raised by the gang were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members, including those imprisoned in the United States, inside and outside of Maryland, and in El Salvador;

    g.    MS-13 members and associates hindered and obstructed the efforts of law enforcement to identify, apprehend, and successfully prosecute and punish gang members;

    h.    MS-13 members and associates investigated rival gang members or other persons targeted for violence; would obtain information about such targets, including locations frequented by them; and would use such information in their plans to attack such targets; and

    i.    MS-13 members and associates agreed that acts involving murder, including conspiracy and attempts to commit murder, and other acts of violence, would be committed by MS-13 members and associates against rival gang members and persons deemed as threats to MS-13 and for the purpose of imposing discipline within the gang, and on other occasions as deemed necessary.

### Murder in Aid of Racketeering

24. On or about August 29, 2017, in the District of Maryland, and elsewhere, the defendants,

**MANUEL ERAZO ALVARADO,**
a/k/a Castigo,

**LUIS ALBERTO GOMEZ,**
a/k/a Sarko,

**ERICK GUILLEN PLEITEZ,**
a/k/a Kilo,



and

**HERMAN ALBERTO HILDALGO CRUZ,**
a/k/a Pisces,

and others known and unknown to the Grand Jury, while aiding and abetting each other, for the purpose of gaining entrance to, and maintaining and increasing position in, MS-13, an enterprise engaged in racketeering activity, knowingly murdered Victim 1, in violation of, and punishable pursuant to, Maryland Code, Criminal Law §§ 2-201 and 2-204, and the Common Law of Maryland.

18 U.S.C. § 1959(a)(1)
18 U.S.C. § 2

                                    *Phil Selden* /A.S.
                                PHIL SELDEN
                                Acting United States Attorney

                                DAVID L. JAFFE
                                Chief
                                Department of Justice
                                Violent Crime and Racketeering Section

A TRUE BILL:

**SIGNATURE REDACTED**
_____
Foreperson

2/13/2025
_____
Date